IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| J. DEON JOHNSON, | ) | 4:05CV3280 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| KANSAS CITY LIFE INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff, J. Deon Johnson, formerly a general agent of the defendant, Kansas City Life Insurance Company ("KCL"), has moved for summary judgment on two claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). Johnson seeks to recover retirement benefits under § 502(a)(1)(B) of the Act, 29 U.S.C. § 1132(a)(1)(B), and also asserts a claims for breach of fiduciary duties under § 502(a)(3) of the Act, 29 U.S.C. § 1132(a)(3). KCL has cross-motioned for summary judgment on these ERISA claims on the ground that Johnson acted as an independent contractor in his capacity as a general agent. KCL has also moved for summary judgment on Johnson's claims arising under Nebraska common law for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel (or "detrimental reliance").[1]

Because I find as a matter of law that Johnson was not a KCL employee, I will deny his motion for summary judgment and will grant KCL's cross-motion on the ERISA claims. I will not address the balance of KCL's motion because I decline to

---

[1]Johnson has filed a motion for leave to file a supplemental index of evidence "to demonstrate that Kansas City Life has interpreted the general agent's retirement plan differently in respect to other general agents." (Filing 78.) I will grant this motion instanter without ruling on KCL's relevancy objection (filing 79).

exercise supplemental jurisdiction over the state-law claims, which will be ordered dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### *I. ERISA Claims*

Section 502(a) enables a benefit plan "participant" to enforce the substantive provisions of ERISA. See 29 U.S.C. § 1132(a). A "participant" is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . .." 29 U.S.C. § 1002(7). Thus, Johnson's ERISA claims can succeed only if he was KCL's "employee," a term the Act defines as "any individual employed by an employer." 29 U.S.C. § 1002(6).

For the purpose of determining who qualifies as an "employee" under ERISA, the Supreme Court has adopted a common-law test that considers "the hiring party's right to control the manner and means by which the [work] product is accomplished." See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 & n. 3 (1992). "Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Id. at 323-324 n. 3 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989)).

Material to the issue of Johnson's alleged status as a KCL employee, I find the following facts to be undisputed:[2]

---

[2] In making this finding, I rely upon the parties' separate statements of material fact, and their responsive statements, prepared in accordance with our local rule. See

1. Johnson was hired by KCL as an agent supervisor in Jonesboro, Arkansas, in approximately 1966. (Deposition of J. Deon Johnson ("Johnson Depo.")) (See Plaintiff's Exhibit 1 (filings 51, 64, 73); Defendant's Exhibit C (filings 55, 66) & Supplemental Exhibit A (filing 77), 22:10-23:4; 24:5-26:5). In this position, Johnson was considered an employee of the company. (Johnson Depo. 25:1-12; 26:6-27:6).

2. In 1969 Johnson began working for KCL as an individual insurance agent selling KCL insurance policies. (Johnson Depo. 74:24-25; 75:1-25; 76:1-14). An individual insurance agent locates, obtains and services those clients who purchase insurance from that agent. (Johnson Depo. 76:15-77:12). In addition to acting as an individual agent, Johnson was also working for KCL's home office. (Johnson Depo. 74:24-25; 75:1-25; 76:1-14).

3. The individual agent contract Johnson signed in 1968, which became effective in 1969, identified Johnson as an independent contractor and not an employee of KCL. (Johnson Depo. 73:1-74:23; 78:12-22; Ex. 5, p. 5) ("This agreement is not intended to create, and shall not be construed to create, the relationship of employer and employee between the Company and the Second Party").

4. In 1970 Johnson started working for KCL's home office as a regional supervisor in Lenexa, Kansas. (Johnson Depo. 27:7-17). In this capacity, Johnson was again considered an employee of KCL. (Johnson Depo. 27:18-20; 28:6-19).

---

NECivR 56.1 ("The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law. . . . The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts.").

5. As a regional supervisor, Johnson was paid a salary and was provided with employees and supplies. (Johnson Depo. 28:11-19). Johnson also had the opportunity to participate in a KCL retirement plan for KCL employees once he reached the age of 35. (Johnson Depo. 30:14-32:13).

6. On January 1, 1972 Johnson ended his employment as a regional supervisor and became a general agent of KCL. (Johnson Depo. 28:20-25; 29:1-3). A general agent retains individual agents to sell KCL products and encourages them to identify additional clients to purchase such products. (Johnson Depo. 76:15-77:1-5). In exchange, the general agent receives a commission override, which is a percentage of the commission that the individual agent earns. (Johnson Depo. 76:24-77:9). Johnson worked as a general agent for KCL from January 1,1972 until May 20,2004. (Johnson Depo. 28:20-25, Ex.12).

7. Once he became a general agent, Johnson opened the Deon Johnson Agency in Omaha, Nebraska. (Johnson Depo. 28:20-25; 29:1-3). KCL exercised no discretion over the location of Johnson's office, but it advised Johnson to begin working out of his home and then decide, at a later time, whether it was feasible to have an office. (Johnson Depo. 41:20-25; 42:1-12).

8. Johnson is aware that there are retirement benefit plans for home office employees that are separate from those offered to KCL's individual agents and general agents. (Johnson Depo. 31:23-25; 32:1-3; 32:8-17). As a general agent, Johnson was not eligible for benefits under the KCL retirement plan that was available to regional supervisors and other home office employees. (Johnson Depo. 31:17-22).

9. A separate retirement benefit plan existed for general agents. (Johnson Depo. 31:23-25; 32:1-5). Johnson began participating in the general agents' retirement plan on January 1,1972. (Johnson Depo. 122:2-124:19).

10.  Johnson's 1972 general agent contract with KCL, like the 1968 individual agent contract, identified Johnson as an independent contractor. (Johnson Depo. 73:1-74:23; 83:3-8; Ex. 6, p. 5) ("This agreement is not intended to create, and shall not be construed to create, the relationship of employer and employee between the Company and the Second Party").

11.  For Johnson's first three months as a general agent, KCL paid Johnson an allowance of $1,000 per month, plus commissions on any KCL products that he personally sold. (Johnson Depo. 34:15-36:13). KCL did not provide any direction to Johnson as to how to use the $1,000 per month, nor did it place any restrictions on him. (Johnson Depo. 35:15-22; 38:15-39:2).

12.  After his first three months as a general agent, Johnson worked strictly on commission. (Johnson Depo. 35:9-12; 36:17-22).

13.  As a general agent, Johnson hired individual agents to work under him. (Johnson Depo. 37:16-38:1). KCL did not reimburse these agents for their expenses. (Johnson Depo. 38:6-11). Johnson also had discretion to terminate or discipline the agents that he retained, and he could do so without input from KCL. (Johnson Depo. 65:24-25; 66:1-18).

14.  KCL reimbursed general agents for one-half of their travel expenses to attend a required yearly product information meeting, and to attend non-mandatory training sessions in Kansas City. (Johnson Depo. 40:10-41:9). KCL also reimbursed general agents for three-fourths of the cost of pre-approved advertising, provided that they met a specified production threshold and conducted the required amount of business. (Johnson Depo. 39:8-41:16; 43:22-45:3; 46:5-20). Finally, KCL reimbursed general agents for long-distance calls made to the home office in Kansas City prior to KCL's establishment of a toll free number. (Johnson Depo. 39:8-40:1). KCL did not

reimburse Johnson for any other expenses. (Johnson Depo. 34:20-35:22; 35:9-12; 36:17-22).

15. As a general agent, Johnson located and paid for his own office space. (Johnson Depo. 41:20-42:9). KCL supplied Johnson's original office furniture, but Johnson purchased any replacement furniture. (Johnson Depo. 45:8-18). Johnson paid for his own liability insurance. (Johnson Depo. 42:13-43:1). Johnson also paid his own licensing and continuing education expenses (Johnson Depo. 39:3-7; 41:10-19, 48:2-9). Johnson purchased his own computers and software programs, but KCL did make an illustration program available free of charge. (Johnson Depo. 45:21-25, Deposition of James Wilcox ("Wilcox Depo.") (See Plaintiff's Exhibit 3 (filing 51)). KCL also provided Johnson with company stationery, business cards, envelopes and sales presentation pieces. (Johnson Depo. 45:4-7; 46:1-4; 46:24-48:1).

16. KCL did not at any time provide instructions or directions to Johnson regarding soliciting or obtaining clients. (Johnson Depo. 48:2-9; 49:10-22: 50:21-51:8). KCL also did not provide Johnson with any written policies or procedures that he was required to follow in conducting his general agent business in Nebraska. (Johnson Depo. 51:9-14). Although KCL was able to provide an opinion on how to run his business, Johnson was not required to follow such advice. (Johnson Depo. 64:16-22).

17. From 1972 to 1987, a KCL regional director visited Johnson's office approximately every six to eight weeks. (Johnson Depo. 52:12-18). At these visits the KCL regional director would review Johnson's agency plan, which contained the hours that Johnson spent on his personal sales and the hours he spent helping other agents sell policies, and would discuss Johnson's plans for hiring individual agents. (Johnson Depo. 49:23-50:5, 51:18-25, 64:1-12). After 1987, a KCL regional director or vice president visited Johnson only twice. (Johnson Depo. 52:19-53:4).

18. KCL offered schools that Johnson could attend if he wanted to learn about KCL products; however, attendance was not required. (Johnson Depo. 48:2-9, Wilcox Depo. 14:10-19).

19. KCL paid a portion of medical benefit premiums for its general agents, as long as they met a specified production threshold. (Johnson Depo. 61:22-63:2). General agents who did not meet the production threshold would have to pay the entire premium if they wished to receive medical benefits. (Johnson Depo. 61:22-63:2). General agents also had to meet a production threshold to qualify for disability or group life insurance. (Johnson Depo. 63:3-25).

20. Although Johnson's general agent contract with KCL stated that he was not to solicit for another life insurance company, Johnson signed a general agent contract with United Life Insurance Company in May of 1988, selling products that were similar to those offered by KCL, and, as a result, Johnson's production with KCL decreased. (Johnson Depo. 99:7-105:8, Ex. 6, p. 5).

21. Since becoming a general agent in 1972, Johnson filed his taxes as a self-employed individual. (Johnson Depo. 66:19-25, 67:1-5, 119:8-11, Ex. 1-3). KCL issued IRS tax forms 1099 to Johnson. (Johnson Depo. 68:15-25, Ex. 4).

22. Johnson admits that he did not at any time contact anyone from Kansas City Life to dispute his classification as an independent contractor while working as an individual agent or a general agent. (Johnson Depo. 118:25; 119:1-7).

I find no facts material to the employment issue that are genuinely disputed. The undisputed facts set forth above weigh heavily in favor of finding that Johnson was an independent contractor, a result that is consistent other cases in this circuit

involving insurance agents. See Wortham v. American Family Ins. Group, 385 F.3d 1139, 1140-1141 (8th Cir. 2004) (as a matter of law, that plaintiff was an independent contractor because (1) she was an insurance professional, (2) the agent agreement expressly identified her as an independent contractor, (3) the insurance company did not supervise her day-to-day activities, (4) she worked out of an independent office, hired her assistants, and paid all office-related expenses, including assistants' salaries, rent, utilities, furniture, and supplies, (5) she was not subjected to any formal hour or leave policies, (6) she was paid exclusively by commission, did not receive employee benefits, and was responsible for paying self-employment taxes, and (7) she was free to terminate her contract at will; while some aspects of the parties' relationship were consistent with employment, the overwhelming balance of factors supported the district court's independent contractor determination); Schwieger v. Farm Bureau Ins. Co., 207 F.3d 480, 486-487 (8th Cir. 2000) (agent contract evidenced the parties' original intent to enter into an independent contractor relationship, which, in fact, is what they did; the plaintiff, a skilled professional, was paid by commission, was responsible for all her own taxes, rented her own office space, hired and paid her own assistants, and was essentially free to conduct her business when, how, and with whomever she chose, with little or no supervision of her day-to-day activities; the fact that some aspects of the parties' relationship suggested an employment relationship was insufficient to outweigh the strong evidence indicating that plaintiff was an independent contractor); Birchem v. Knights of Columbus, 116 F.3d 310, 313 (8th Cir.1997) (district court correctly held that plaintiff was an independent contractor because (1) the agent contract expressly provided that "[n]othing contained in this Agreement shall be construed to create the relationship of employer and employee," (2) the parties' financial relationship strongly suggested that the plaintiff was an independent contractor, in that he was paid on a commission basis, the insurance company did not withhold income taxes from his commissions, and the plaintiff reported his commissions as income of a self-employed individual for federal tax purposes, (3) the company did not control his daily activities, and (4) federal courts have consistently held that insurance agents are independent contractors).

Accordingly, I will grant KCL's motion for summary judgment on the ERISA claims. See Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 488 (8th Cir. 2003) (issue whether workers were employees or independent contractors is question of law which may properly be resolved by summary judgment provided there is no genuine issue of material fact). Johnson's motion for summary judgment will be denied.

## II. *State-Law Claims*

One of the issues identified by the parties in the final pretrial conference order is "[t]o the extent ERISA does not apply, whether the Court should exercise pendent jurisdiction over Plaintiff's state law claims." (Filing 88, p. 4, ¶ C12.) I answer this question in the negative.

Johnson's complaint alleges that "[t]his Court has jurisdiction [over the ERISA claims] pursuant to 29 U.S.C. § 1132(e)[,]" and that the state-law "Causes of Action are filed under the Doctrine of Pendent Jurisdiction." (Filing 1, ¶¶ 2, 20.) There are no allegations to establish diversity jurisdiction under 28 U.S.C. § 1332.

When a district court has original jurisdiction in a civil action, it also has supplemental (or pendent) jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, the district court, in its discretion, may decline to exercise supplemental jurisdiction whenever it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually "will point toward declining to exercise jurisdiction over the remaining state law claims." In re Canadian Import Antitrust Litigation, 470 F.3d 785, 792 (8th Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988)). See also Gibson v. Weber, 433 F.3d 642, 647

(8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, . . .."). Indeed, the Court of Appeals has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible." Gregoire v. Class, 236 F.3d 413, 420 (8th Cir. 2000) (quoting Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir.1990). "[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law . . .." Id. at 420-21 (quoting ACLU v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir.1999).

Because the parties have raised the issue, and because it is not apparent that either party will be prejudiced if the state-law claims are dismissed, I will follow the usual practice and decline to exercise supplemental jurisdiction in this case. Thus, the state-law claims will be dismissed without prejudice. I will also deny the balance of KCL's motion for summary judgment without prejudice.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's motion for leave to file a supplemental index of evidence (filing 78) is granted instanter.

2. Plaintiff's motion for summary judgment (filing 49) is denied.

3. Defendant's motion for summary judgment (filing 53) is granted in part and denied in part, as follows:
   a. The motion is granted with respect to Plaintiff's ERISA claims (Counts I and II of the Complaint).
   b. In all other respects, the motion is denied without prejudice.

4. Pursuant to 28 U.S.C. § 1367(c)(3), Plaintiff's state-law claims (Counts III, IV, and V of the Complaint) are dismissed without prejudice.

5. Final judgment shall be entered by separate document.

February 8, 2007.                    BY THE COURT:

                                     s/ *Richard G. Kopf*
                                     United States District Judge